FILED IN THE
U.S. DISTRICT COURT
Eastern District of Washington

APR 24 2001

JAMES R. LARSEN, CLERK
——————————— DEPUTY

C. MATTHEW ANDERSEN, WSBA #06868
WINSTON & CASHATT
1900 Bank of America Building
Spokane, Washington  99201
Telephone:  (509) 838-6131

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALFRED P. CHRISTOFFERSEN, WILLIAM J. GIBSON, RICHARD F. MAIN, and JOHN R. WARN,<br><br>                   Plaintiffs,<br><br>vs.<br><br>WASHINGTON AIR NATIONAL GUARD, in its capacity as a Federal Agency, MAJOR GENERAL TIMOTHY J. LOWENBERG, as a Federally Recognized Adjutant General of Washington State, UNITED STATES AIR FORCE, a Department and Agency of the United States; and NATIONAL GUARD BUREAU, an Agency of the United States,<br><br>                  Defendants. | Case No.  CS-01-0010-AAM<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>(Cause No. 81-02-03081-0, In the Superior Court, State of Washington, County of Spokane)<br><br>**(oral argument requested)** |

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -1-

LAW OFFICES OF
Winston & Cashatt
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

## 1.    Introduction

The federal government has filed a motion it styles as one to Dismiss.  The motion does not state the civil rule it is proceeding under or offer a justification for its motion.  In reality, this is a motion for summary judgment without a supporting statement of material facts or affidavits.  As the government relies extensively on matters outside of the pleadings, it must be treated as a F.R.C.P. 56 motion for summary judgment F.R.C.P. 12(c).  The Court is asked to disregard the form of the motion and treat the issue before the Court as one for summary judgment.  Plaintiffs have filed a motion for summary judgment, which is set for oral argument on June 14, 2001.  The Court is asked to treat the motions as cross motions for summary judgment and rule on the merits at the oral argument.

The Court is asked to likewise consider the arguments advanced in support of Plaintiffs' motion for summary judgment in considering the government's motion to dismiss.

## 2.    Motion To Strike Portion Of Briefing

At page 5 of its briefing, the federal government refers to settlement negotiations between the State and Plaintiffs.   The assertion is not support by affidavit and is not admissible.  F.R.C.P. 56(e)  The Court is asked to strike lines

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -2-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

9-19 of the briefing.  The statements, arguments and inferences to be made from settlement negotiations are inadmissible for any purpose related to this case. ER 408. The court is asked to direct the government to redact the offending materials and re-submit its memorandum.

**3.  A Material Issue Of Fact Exists As To Which Party Is Filing The Motion To Dismiss**

Plaintiffs seek Declaratory relief and named Washington Air National Guard (WANG) and MG Lowenberg as federal agents.  32 USC §709(d)  Plaintiffs have also named the United States Air Force and the National Guard Bureau.  To date, it is unclear who is representing the federal agents.  The answer filed does not offer an appearance or answer for MG Lowenberg or for WANG, as federal agents.  The Motion to Dismiss does not address the status of the defendants nor does it attempt to address the precise conflict in positions that required the filing of the complaint. The Motion to Dismiss brings home the ludicrous position confronting the Plaintiffs.  Who is making the decisions and who is advancing the arguments?  It is obvious that the federal agents' position is neither addressed nor advanced in the briefing.    The briefing is silent on the graveman of the dispute between the Adjutant General's authority under the Back Pay Act and the U.S. Air Force.  This

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -3-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

dispute alone is a material issue raised in the pleadings which would deny the Motion to Dismiss.

There is a clear conflict of interest presented in the position stated by the U.S Attorney's office and it must be resolved prior to hearing on the government's motion. The Court is asked to require government counsel to state, with precision, whose interest it is appearing on behalf of in this matter.  To the extent the Adjutant General's and WANG's interests as federal agents are not represented, that needs to be resolved promptly.

### 4.    Jurisdiction Is Proper In This Court.

The motion to dismiss argues this is a Claims Court matter.  The position is in error.  This Court is not asked to award money.  This Court is not asked to rule on the efficacy of the claim for reimbursement.  This Court is not asked to rule if the Back Pay Act has been properly applied or what its limitations may be.  This Court is asked only to tell Plaintiffs who is right, the federal agent, MG Lowenberg or the United States Air Force.  Authority to act and make decisions under the Back Pay Act are administrative in nature.  Invoking the Back Pay Act by the State as a "federal agent" defines the relationship between the Plaintiffs and the claims against the State.  28 USC §2201 gives jurisdiction to "any court of the United

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -4-

LAW OFFICES OF

*Winston & Cashatt*

1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

States" the power to declare the rights and relationships of any interested parties. The only relief sought is a declaration as to who is right and that claim is properly heard in this Court.

## 5.    Plaintiffs Have Standing

As shown in Plaintiffs' brief in support of summary judgment, Plaintiffs have established the threshold to show standing and to seek relief under the federal Declaratory Judgment Act. Once again, the federal government seeks to avoid the merits of the claims of these Plaintiffs and point the finger of liability elsewhere.

The government's briefing argues first that there is no controversy with the federal government. The briefings disingenuous argument ignores the lawsuit. It is the federal government's "agent", MG Lowenberg who is asserting authority to act which the U.S. Air Force denies. This assertion creates the controversy. Moreover, the federal government's answer denies that MG Lowenberg is a federal agent. His status alone creates the case in controversy for resolution by this Court.

The government asserts Plaintiffs reverse their position from that taken in the removal action. This likewise is incorrect. Plaintiffs do not make a federal Back Pay Act claim in their state lawsuit. They seek damages for lost monies due. It is the federal agent, MG Lowenberg, who is taking the position that he has

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -5-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

authority under the Back Pay Act and further, the Federal law bars recovery in the State lawsuit. It is the federal agent who is controlling the need for a declaration of rights. This is not an action in indemnification as alluded by the government. This is a lawsuit to resolve once and for all who has authority to act under a Federal law. If this does not raise a federal controversy no issue would qualify for resolution under the Declaratory Judgment Act.

## 6.   The Action Is Timely And Not Moot

The government contends the action is moot. Plaintiffs are responding to a State defense in a pending lawsuit where on its <u>face</u> a federal agent is contending the claims are barred by the application of the Federal Back Pay Act. The United States Air Force has taken the position that the federal agent does not have the authority to act. This action is not moot. It is ripe and needs to be addressed for the interests of all, not the least of which is judicial economy.

## 7.   Application Of The Back Pay Act

The government makes an oblique reference to the real issue in this case in asserting the Back Pay Act is not applicable to the National Guard. The government misses the question raised. This is not a question of asserting application of the Back Pay Act to the military status of each Plaintiff. This is a

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -6-

LAW OFFICES OF



*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

question of asserting the Back Pay Act's application to federal civil servants.  By law, each Plaintiff was an employee of the United States Air Force.  32 USC §709(e)  They were <u>not</u> employees of the National Guard Bureau as asserted by the government,  The authority cited by the government is all for the proposition that the National Guard Bureau is not a department subject to a discrimination lawsuit.  That is not the case before this Court.  Plaintiffs seek resolution of the issue as employees of the U.S. Air Force, not the National Guard Bureau.

More importantly, the government's argument contradicts the announced position of the National Guard Bureau in <u>U.S. Department of Defense, National Guard Bureau and Association of Civilian Technicians.</u>  55 FLRA Rep. No. 9th (copy attached as Exhibit 13 to Affidavit of C. Matthew Andersen)  In that case, the Association of Civilian Technicians attempted to consolidate all State Technician program's into a single collective bargaining.  The Association argued the State had no role in employment matters of Technicians.    Resisting this argument, the National Guard Bureau argued the plain meaning of 32 USC §709 delegated employment responsibility for the program solely to the Adjutant General and to no others.  <u>Id. pg 6</u>  This rule was adopted by FLRB.  The Guard Bureau has previously acknowledged the Adjutant General controls the

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -7-


LAW OFFICES OF
Winston & Cashatt
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

Technician's Program. The inconsistent positions taken by the National Guard Bureau is different forums should not be accepted by the Court. The Court is asked to rule the government is judicially estopped from asserting a position contrary to its prior judicial assertions. <u>Rissetts v. Plumbers and Steamfitters Local 343</u>, 94 F.3d 597 (9th Cir. 1996).

Each Plaintiff has established through the AFBCMR that they are entitled to the full military rank they were deprived of by MG Collins. In the fullness of relief, they are likewise entitled to be compensated for their loss as civil servants. One federal agent says the loss is covered by the Back Pay Act. The other federal agency says it is not. Plaintiffs are in the middle and the scope of the authority of the Adjutant General under the Back Pay Act is now before this Court.

## 8.    Background Of The Technician Program

The government has attempted to downplay and obscure the true nature of Plaintiffs' position as Technicians. The following briefing is provided to assist the Court in placing the Federal Technician position in its civil service context. The background of the program, its purpose in preserving retirement benefits and its

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -8-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

control by the State Adjutant General shows why the question is not as easily addressed as asserted by the government.

Each plaintiff had a dual status as a member of the WANG and as a civilian Air National Guard Technician. Each plaintiff was a career civil servant in addition to being in the WANG. As an aberration to federal civil service employment, by statute, each plaintiff is required to maintain status as a Guardsman to retain his civil service position. 32 USC §709.

### 8.1    The National Guard Structure

### 8.1.1  The Federal Agency

The National Guard is a creature of federal statute that seeks to integrate the state/territory militias in the overall defense strategy of the United States. 32 USC §102. The National Guard is composed of the Army and Air National Guard. 32 USC §101(3). The Air National Guard is that part of a state's militia which has been "recognized" by the federal government as a component of the National Guard. 32 USC §101(6) Regulations governing the Guard are prescribed by the President as delegated to the Department of Defense (formerly the War Department) 32 USC §110; Gaston v. U.S., 34 A.2d 353 (D.C. Mun. App. 1943),

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -9-

LAW OFFICES OF
Winston & Cashatt
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

cert. den. 322 U.S. 764 (1944).  The Secretary of Defense directs the affairs of the

Air Force through the Secretary of the Air Force. 10 USC §8012.

The Secretary of the Air Force has broad authority to conduct the affairs of

the Department of the Air Force and shall supervise activities of the reserve

components of the Air Force.  10 USC §8012(d)(3).  The Air National Guard is a

reserve component of the U.S. Air Force.  32 USC §101(7) and 10 USC §8062(d).

The Secretary of the Air Force may delegate his supervisory function of the Guard

to the Under Secretary of the Air Force or to one of three Assistant Secretaries.

10 USC §8012(d).

To assist the Defense Department in communicating with the various State

Guards, there has been created a National Guard Bureau (NGB).  10 USC §3015.

Its sole purpose is to channel communications between the departments and the

states/territories on Guard matters.  The Bureau is headed by a "Chief" who acts as

an advisor to the Chiefs of Staff of the Army and Air Force on Guard matters.

### 8.1.2  The State Agency

The Washington State National Guard is headed by the Governor.   The

Adjutant General is the executive head.   RCW 38.08.020.   The State Guard is

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -10-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

divided into two departments, the Army and the Air Guard, which are each controlled by the Adjutant General. RCW 38.12.015.

Officers in the "organized militia" of the State of Washington are eligible to remain in service until age sixty-four, unless terminated for cause. RCW 38.12.180. The "organized militia" includes those serving in the National Guard. RCW 38.04.010. None of the Plaintiffs were subject to any mandatory military retirement provisions of the laws of the State of Washington. There is no contention that Plaintiffs were dismissed for cause.

### 8.1.3 Military Retirement Laws

An officer "recognized" in the National Guard of the United States is statutorily subject to termination if (1) he becomes sixty-four or (2) he loses his federal recognition. 32 USC §324.

The only forced retirement laws affecting the federal recognition of Plaintiffs Main, Christoffersen and Warn would have been twenty-eight years of military service, 10 USC §8848, with a permissible waiver from the Secretary to service until age 60 because they were Air Guard Technicians. 10 USC §8848(c). For Plaintiff Gibson, the only retirement law would be thirty years of military service. 10 USC §8851. This process of retirement is part of the Reserve Officers

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -11-

LAW OFFICES OF

1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

Personnel Act (ROPA).  At the time of each Plaintiffs' "involuntary retirement," none was eligible for mandatory retirement under the law.  There is no statutory authority for retiring Washington State Guard officers of Plaintiffs' rank after twenty (20) years of service.

### 8.2    The Technician

Plaintiffs' civil service position was created by The National Guard Technician's Act of 1968, PL 90-486, 32 USC §709.  Technicians provide care for the Defense department equipment being used by the States until it is necessary to call the State units to active duty for national purpose.  As stated in Report No. 1446 at page 1 of the Senate Committee on Armed Services:

> In authorizing Federal employee status for the National Guard technicians, the purpose of this legislation is--
>
> (a) **To provide a retirement and fringe benefit program which will be both uniform and adequate;** (emphasis added)
>
> (b) To recognize the military requirements and the State characteristics of the National Guard by providing for certain statutory administrative authority at the State level with respect to the technician program;
>
> (c) To clarify the technicians' legal status which in certain areas has been the subject of conflicting court decisions, especially on the matter of whether technicians are covered under the Federal Tort Claims

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -12-



LAW OFFICES OF
Winston & Cashatt
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

1

2

Act regarding third party actions against the U.S. Government.

3

The Committee further noted at page 2 of Report No. 1446 that the

4

legislation was designed to provide a program of retirement that would have

5

6

uniform national application.

7

Despite uniformity with respect to salaries and required standards there <u>has been no program, on a uniform national basis for a</u> ***retirement and fringe benefits program for technicians.***

8

9

10

. . .

11

12

13

14

15

16

17

This bill implements the purpose by converting the Technicians to Federal employee status with certain controls on administration and supervision which would as a matter of law remain at the State level.  In effect, ***the technicians will become Federal employees receiving the salaries, fringe and retirement benefits, but with certain administrative control regarding employment supervision remaining with the adjutants general of the jurisdiction concerned under regulations prescribed by the Secretary concerned.*** (Emphasis added)

18

As was noted in <u>Proprietors, Ins. Co. v. U.S.</u>, 688 F.2d 687, 689 (9th Cir.

19

20

1982), "[T]he purpose of the National Guard Technician Act was to create for

21

National Guard Technicians a retirement and fringe benefit program which will be

22

both uniform and adequate."

23

24

25

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .

26

PAGE -13-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

## 8.3    The Regulation, ANGR 36-06

In the mid-seventies, the NGB unilaterally conceived a program that was intended to promote qualitative retention of Guard officers.  The program has no statutory basis.  The program became known as "Vitalization" and was published as a NGB regulation ANGR 36-06 in October 1977, for the Air Force.  The Army's version is NGB 635-102.  Prior to these regulations there had never been a concept of "Vitalization" in the Guard.

The "Vitalization" concept for Guardsmen as provided in ANGR 36-05, paragraph 13a(10) is:

> . . . All officers with 20 years of Federal service qualifying for retirement pay (10 USC §1331) will be discharged unless specifically recommended for retention by appropriate board in accordance with ANGR 36-06.  (Emphasis added) (Ex. 18, para. 13(a)(10))

ANGR 36-06, Paragraph 10(e), provides for an evaluative procedure by a duly constituted Board of officers of the following factors:

> e.    In arriving at an evaluation, the board should consider but not be limited to the following:
>
> (4)    *Status with regard to Air Technician retirement eligibility*.  (See Exhibit 4 to Affidavit of C. Matthew Andersen).

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -14-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

The Boards reviewing each Plaintiff found them to be the "most qualified" to continue in the Guard. (See, Exhibit 5 to Affidavit of C. Matthew Andersen)

### 8.4    The Custom

In passing the Technician Act, Congress and the NGB were both sensitive to the fact that Guardsmen, by operation of mandatory retirement laws, may be forced out of the Guard and thereby lose the ability to serve as Technicians. To protect the Technician, the Armed Services Committee sitting on the National Guard Technician's Act of 1968 stated in Report No. 1446 at pages 11-13:

> The Committee would make the following comments with respect to any involuntary retirement through the operation of the military personnel laws. Normally, under the Reserve Officer Personnel Act a lieutenant colonel or colonel is eliminated from an active status at about ages 53 and 55 respectively, since they will have completed 28 and 30 years of Reserve service. <u>Reserve officers who are technicians under normal circumstances would therefore lose their active National Guard membership and consequently be separated from their civilian technician job because of the requirement for a dual status.</u> Such persons would therefore be retired within immediate civil service annuity under the involuntary separation process if they had completed 25 years of service or had reached age 50 and completed 20 years of service.
>
> The bill, however, contains a provision which will permit the Secretaries of the Army and the Air Force on a permissive basis to retain Reserve officers who are technicians in an active military status until age 60, <u>notwithstanding, the operation of the Reserve personnel laws which would</u>

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -15-



LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

eliminate them because of promotion, passover or length of service. The committee made this provision permissive with the result that all Reserve technician officers could remain until age 60. It is the intention of the committee, that where the officer is fully qualified to hold his military position and properly performing his technician job, he should be retained in his technician employment. (Emphasis added)

As allowed by statutes (10 USC §8848(c) and 8815(c)) and in response to this problem, the NGB, with approval of the Secretaries of the Army and the Air Force, set up a program to protect Technicians who might otherwise be affected by military personnel laws. The policy decision was that any Technician hired prior to July 1, 1955, would be allowed to remain as a Technician until age sixty (60). These Technicians are known as "Grandfathers." No Appellant is a Grandfather. All other Technicians would be allowed to remain until age fifty-five (55) so as to obtain the maximum civil service retirement annuity, with a discretionary waiver to age sixty (60).

The record before the AFBCMR showed conclusively the age fifty-five (55) policy was published in the National Guard regulations as early as 1968. It has appeared in numerous regulations and policy letters. It was and remains the policy of WANG. Plaintiffs' firing was the exception.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -16-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

### 8.5    Major General Collins' Action

In August 1978, Appellants were among nine WANG members who were summarily discharged when political fortunes changed hands overnight and brought Robert J. Collins from the rank of Colonel to Major General and State Adjutant General. RCW 38.12.010. His actions have become known locally as the "massacre."

Each Plaintiff had been specifically recommended for retention by a Board of officers in 1978. (Exhibit 5 to Affidavit of C. Matthew Andersen)  The Board's findings were interpreted by MG Collins to be "advisory" in nature and he ignored the Board.   Without authority or precedent, he chose to "involuntarily retire." There are no other instances where an Adjutant General has overridden the decision of the ANGR 36-06 Board to involuntarily non-retain officers.   Each Plaintiff was incorrectly advised in writing that the Board did not select them for retention. (See Attachment 2 to each of Plaintiffs' Affidavits, Exhibits 6, 7, 8, and 9 of Affidavit of C. Matthew Andersen)   When examined, MG Collins acknowledged he did not take into consideration the Plaintiffs' employment as Technicians or their civil service performance files.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -17-

LAW OFFICES OF
*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

MG Collins chose to interpret ANGR 36-06 in a manner which suited his individual desires, as opposed to the needs of the National Guard, as outlined in the criteria. As shown by the Affidavits of the individual Plaintiffs and the ruling by the AFBCMR, Plaintiffs were "axed" because of earlier adherence to federal regulations requiring security of nuclear weapons. MG Collins has never challenged the fact that he had a hidden agenda and retaliated. In fact, he developed a written "hit" list of those to be fired. (Exhibit 13 to deposition of MG Collins, Exhibit 10 to Affidavit of C. Matthew Andersen) The Plaintiffs were member 1-4 on the "hit list." The federal government has indicated it does not challenge the finding of the AFBCMR.

The current Adjutant General has recognized the AFBCMR has found the wrongful termination. His use of the Back Pay Act is an effort to correct Plaintiffs' civil service records. No explanation is offered in the government's motion as to why MG Lowenberg does not have that authority.

### 9.    Conclusion

As shown above, the government's motion to dismiss is procedurally incorrect and not consistent with the issue in the case or the law. The Court is

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS. . .
PAGE -18-

LAW OFFICES OF

*Winston & Cashatt*
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131

asked to deny the motion and proceed to hearing on a declaration of rights as set

forth in Plaintiffs' Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this _24th_ day of April 2001.

C. MATTHEW ANDERSEN, WSBA #06868
WINSTON & CASHATT
Attorneys for Plaintiffs

I hereby certify that I caused a true and correct
copy of the foregoing to be [X] mailed, postage
prepaid; [ ] sent via facsimile; [ ] hand-delivered,
on this _24th_ day of April 2001 to:

Jonathan T. McCoy
Assistant Attorney General
Attorney General of Washington
11215 Washington Street SE
Olympia, WA 98504-0100

Rolf H. Tangvald        _hand delivered_ (m)
U. S. Attorney's Office
920 W. Riverside Ave., Suite 300
Spokane, WA 99201-1008

C. MATTHEW ANDERSEN

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS...
PAGE -19-

LAW OFFICES OF
Winston & Cashatt
1900 BANK OF AMERICA FINANCIAL CENTER
SPOKANE, WASHINGTON 99201
www.winstoncashatt.com
(509) 838-6131